Wm. Thomas Lewis/State Bar No. 116695
**ROBERTSON & LEWIS**
Attorneys at Law
150 Almaden Boulevard, Suite 950
San Jose, CA 95113
Telephone: (408) 294-3600
Attorneys for Defendant
Santa Cruz County Bank

UNITED STATE BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re **HARBANS S. GREWAL** and **MANJIT K. GREWAL**,<br><br>Debtors. | Case No. 10-60800<br><br>Chapter 7<br><br>Adversary Proceeding No. 11-05067 |
| **HARBANS S. GREWAL** and **MANJIT K. GREWAL**,<br><br>Plaintiffs,<br><br>vs.<br><br>**SANTA CRUZ COUNTY BANK** and Does 1-10<br><br>Defendants | DEFENDANT'S TRIAL BRIEF |

## INTRODUCTION

After the consensual dismissal of the third cause of action, the remaining two causes of action in the first amended complaint on file in this adversary complaint (the "FAC") allege claims by plaintiff **HARBANS S. GREWAL** and **MANJIT K. GREWAL** (the "Debtor") against **SANTA CRUZ COUNTY BANK** (the "Bank") for violation of the automatic stay under Section 362 and violation of the post discharge injunction under Section 524. Because the third cause of action for a pre-petition state law conversion claim was dismissed, and because Bank's cross complaint alleges offset claims for pre-petition debts against such conversion claims, Bank intends to dismiss its cross-complaint, without prejudice and with each party bearing its own attorneys' fees and costs, consistent with the stipulation dismissing the third cause of action in Debtor's FAC.

The assets in question in this case are the following (the "Subject Assets"):

| | |
|---|---|
| a. 1993 Gold BMW 740il; | n. Personal clothing & blue towels |
| b. BMW engine on rollers; | o. Books, and desktop computer located in the shop |
| c. BMW rims with old tires | |
| d. MBZ rims with old tires | p. Engine Scope |
| e. Water cooler | q. Smog Machine |
| f. Small refrigerator | r. Grease Dispenser |
| g. Dynamometer (in ground) | s. Oil |
| h. Evaporator machine next to smog machine | t. Mop Bucket |
| i. Big cooling Fan | u. O-Rings & Quarter Pins (small plastic boxes) |
| j. Miscellaneous parts | v. Drain Pans (3) |
| k. Parts cleaner (blue box) | w. Parts Cart |
| l. Used black hoses @ nozzles (on shelf) | x. Battery Water Container; and |
| m. Grinder | y. Funnels (misc.) |

Debtor valued the Subject Assets in his Schedules B and C at between $4500 and $5600.

Bank does not dispute that the bulk of such Subject Assets were originally acquired by Debtor when he originally acquired the gasoline station business in 2000, but asserts that same were transferred in 2004 to Debtor's wholly owned corporation All American Gas & Auto ("All American"), when Debtor purchased the real estate on which the business was operated in 2004 (the "Real Property"), a full three years before the Bank's 2007 loan.

At trial, the evidence will show that the Subject Assets were in fact owned by All American, were pledged by All American to Bank in 2007 as part of Bank's loan to All American, and were acquired by Bank in connection with the Bank's pre-petition unified foreclosure sale.

## THE EVIDENCE

*Debtor's 2000 Purchase of Business Assets*

In 2000, Debtor acquired the gasoline station business (but not the Real Property on which same was operated). At the time of such purchase, Debtor obtained a bill of sale itemizing certain

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd.
Suite 950
San Jose, CA 95113

of the assets. Following such purchase, Debtor individually operated the gasoline and service station business, obtained business insurance on (among other things) the Subject Assets (which business insurance named him individually as the loss payee), and depreciated such assets on Schedule C of Debtor's federal form 1040 personal income tax statement.

In 2003, Debtor leased from BWC Leasing a smog machine, cooling fan, and in-ground dynonometer (items g, i, q) (the "Smog Equipment"). Ownership of such Smog Equipment was retained in BWC Leasing, not Debtor.

***Debtor's 2004 Purchase of Real Property and Formation of All American***.

In 2004, Debtor acquired right to purchase the Real Property. Prior to completing such purchase, Debtor formed All American, caused All American to purchase the Real Property, filed Fictitious Business Name Statement for All American reflecting Gilroy Gas & Auto as a fictitious business name, and transferred the business to All American (including the assets originally acquired in 2000, the Subject Assets, the lessee's rights under the 2003 lease for the Smog Equipment, all inventory, and the additional assets acquired for use in the gasoline station business from and after 2000 until the date of such incorporation [the "Transferred Assets"]).

All American thereafter sold all inventory it acquired from Debtor, retained proceeds from such inventory sales in All American, sold, used, consumed and exploited all Transferred Assets in All American's conduct of the gasoline and service station business, and retained in All American all revenues and earnings from such sale, use, consumption and exploitation of the Transferred Assets.

All American never made any payments to Debtor for any of the Transferred Assets (including the Subject Assets), All American's books did not reflect any note or account payable or any lease payable by All American to Debtor personally, there is not any lease to use the Subject Assets between Debtor and All American, no rent payments were made to Debtor from All American for use of Subject Assets, and no UCC filing was made in favor of Debtor on All American respecting the Subject Assets.

Following its incorporation and transfer of the Transferred Assets in 2004, All American made all lease payments on Smog Equipment, All American paid all accounts payable on

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd.
Suite 950
San Jose, CA 95113

inventory acquired from Debtor and on inventory thereafter acquired by All American, All American depreciated all assets (including, without limitation, Transferred Assets and the Subject Assets) on All American's income tax return, Debtor ceased depreciating the gasoline station assets (including, without limitation, the Transferred Assets and the Subject Assets) on Debtor's personal tax return, Debtor directed insurer to change loss payee to All American effective July 31, 2004, All American maintained insurance on assets (including, without limitation, the Transferred Assets and the Subject Assets) naming All American as loss payee and paying all premiums on such insurance, Debtor ceased insuring the Transferred Assets and the Subject Assets in Debtor's own, individual name, All American filed Personal Property Tax Declarations form 571-L on the Transferred Assets and the Subject Assets showing such assets as being owned by All American, and Debtor ceased filing any personal 571-L post 2004 with respect to the Transferred Assets and the Subject Assets.

Debtor will seek to explain that all of these actions in changing the beneficiary on insurance, filing forms 571-L in the corporation's name, transferring depreciation to All American and otherwise transferring all indicia of ownership to All American, in removing himself as a loss payee of insurance on the Subject Assets, on discontinuing the deprecation of the Subject Assets on Debtor's individual return, and on the discontinuation in the filing of form 571-L on the Subject Assets in Debtor's name from and after 2004, were all done without his authority or direction.

Debtor's bookkeeper and Bank's expert will both testify that it the applicable standard of care for bookkeeping and accounting professionals would be to inquire after client formed a corporation if client wanted to transfer business and its sole proprietorship to the corporation and to obtain express instruction and authorization to reflect such a transfer on the individual and corporate books, records and tax materials for the individual and corporation. Additionally, the business records of the insurance broker/agent will reflect that the transfer of the insurance policy to All American was done at Debtor's specific request and instruction.

Debtor testifies that he never sought to amend any of the income or property tax returns or otherwise sought to correct what Debtor now claims was this egregious error.

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd.
Suite 950
San Jose, CA 95113

Debtor would have the court believe that all of the actions in transferring the assets to the corporation for tax, insurance and other purposes was all part of some unauthorized grand conspiracy, intended to deprive Debtor of assets that he claims he legitimately retained. Unfortunately, aside from Debtor's own testimony, all of the objective evidence confirms that Subject Assets were transferred to All American. Further, Debtor's own discontinuation of the reporting and payment obligations on the Subject Assets from 2004 forward confirms that he intended such a transfer to All American. Consequently, the Subject Assets were subject to Bank's lien and were lost in foreclosure in September 2010.

*Acquisition of the EVAP Machine.*

In 2007, All American leased an Evaporation ("EVAP") machine (item h) in name of All American. While Debtor asserts claims with respect to this machine, the purchase documents confirm that same was leased in All American's own name and was owned by Irwin Commercial Finance, such that Debtor never held any right, title or interest in same. Later that same year, All American filed Fictitious Business Name Statement for All American reflecting Gilroy VP Racing as a fictitious business name.

*2007 Loan by Bank to All American*

In July of 2007, All American applied for a SBA loan from Bank to refinance the loan that All American originally undertook to purchase the Real Property.

In connection with such a loan request, Debtor provided bank with Debtor's personal financial statement (the "PFS"), which was signed under penalty of perjury and in which Debtor represented that the only personal property owned by Debtor was limited to "net value of All American Gas & Auto, Inc." No reference was contained in the PFS to any claim that Debtor owned Subject Assets.

The blanks in Debtor's PFS were completed by Bank's representative, while meeting with and in consultation with Debtor. Following completion, the PFS was signed by Debtor.

No copy of a bill of sale related to the initial purchase of the gasoline business and/or the Subject Assets was ever provided to the Bank prior to funding the loan and the Bank's files do not reflect or contain a copy of same. The absence of such a document is admissible itself as a

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd.
Suite 950
San Jose, CA 95113

business record. United States Federal Rules of Evidence, 28 U.S.C. §803(7). The fist time Bank saw same was in connection with Debtor's summary judgment motion in this case.

In connection with such loan application, Bank issued its commitment letter to All American, which commitment letter indicated Bank would require deed of trust on the Real Property and a blanket lien on All American's personal property assets.

On August 14, 2007, the loan closed. The Bank's loan was evidenced by (among other things) a signed note, deed of trust, business loan agreement and security agreement on all assets, with UCC filing. Debtor signed an unsecured continuing guaranty in connection with such debt.

Page 1 of the security agreement grants Bank a security interest in following property:

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

All American defaulted and Bank sent demand letters to All American and Debtor dated 7-27-09, 8-5-09, and 1-5-10. All American and Debtor failed to cure such default, and Bank recorded a notice of default on 2-2-10 and conducted a unified foreclosure sale under Civil Code Section 2924f and UCC Section 9604 on September 29, 2010. On September 30, 2010, the foreclosure trustee recorded its Trustee's Deed upon Sale and on October 1 recorded an amended Trustee's Deed upon Sale. Since the Subject Assets were transferred by Debtor to All American prior to 2007 Bank loan, they were encumbered by Bank lien and Bank acquired title to same when it conducted its unified foreclosure.

*Debtor Files Chapter 7*

On October 18, 2010, following Bank's September 29 foreclosure sale, Debtor filed for Chapter 7 bankruptcy protection.

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd
Suite 950
San Jose, CA 95113

In connection with such proceedings, Debtor purported to serve notice of his bankruptcy on Bank at PO Box 8426 Santa Cruz, CA 95061. The testimony will confirm that the mailing address used by Debtor was the address for mailing payments, not notices.

The Business Loan Agreement and Security Agreement both provide as follows:

> Notices. Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.

The address for notices recited on page 1 of each of the loan documents was: Santa Cruz County Bank, Santa Cruz Office, 325 Soquel Avenue, Santa Cruz, CA 95062.

### *Notice to Bank Defective under Section 342.*

Code Section 342(c)(2) requires the debtor to use an address and account number for required notices to be given by the debtor based on pre petition communications with the creditor and must reference a loan number. 11 U.S.C. § 342(c)(2). Here, notices were apparently sent to an address other than the Bank's specified address for notice and failed to reflect the loan number on such notice. The Bank will testify that its records do not reflect any notice of bankruptcy as having been received by the Bank. The absence of such a document is admissible itself as a business record. United States Federal Rules of Evidence, 28 U.S.C. §803(7).

Even if such a notice were sent and received at the address specified for receiving payments, no loan number was reflected in the notice. The absence of a loan number is critical, because the Bank's records would be indexed by the primary borrower's name and/or loan number. In this case, the notice reflect Debtor (not All American) and failed to include any loan number. If a notice was received by the payment precessing personnel at the payment address, such personnel would not have any idea to whom at the Bank such notice should be directed, because the Bank's records would not reflect any loan to Debtor. Thus, no action or processing of such a notice could occur, because there was not any loan number that would cue the Bank on where to look for obligations related to Debtor. This is exactly why Section 342 requires loan number references. Congress recognized that fairness dictates that a lender with many loans and obligations be given some method through which it can identify the obigor/obligation at issue.

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd.
Suite 950
San Jose, CA 95113

The Code acknowledges that notice provided to a creditor by the debtor or the court other than in accordance with this section shall not be effective notice, until such notice is brought to the attention of such creditor. 11 U.S.C. §342(g)(1).

The Code provides that if the debtor or the court fails to provide "effective" notice as required by Code § 342, then the result is to limit certain damages [a "monetary penalty"] for stay violations:

> A monetary penalty may not be imposed on a creditor for a violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) or for failure to comply with sections 542 or 543 unless the conduct that is the basis of such violation or of such failure occurs after such creditor receives notice effective under this section of the order for relief. 11 U.S.C. §342(g)(2).

Where a creditor violated stay and the debtor failed to show the creditor had notice, the stay violation was, therefore, not willful and claims for damages and attorney's are properly fees denied. *In re Walker*, 336 B.R. 534 (Bankr. M.D. Fla. 2005).

Debtor alleges that the Subject Assets were determined to be exempt assets. Because Bank did not receive proper notice and did not have the opportunity to oppose the exemption claim, any exemption determination is not binding on Bank.

***The Adversary Claim.***

On March 14, 2011, Debtor filed the instant adversary proceeding, seeking the return of the Subject Assets and damages for the Bank's alleged actions. In connection with its complaint, Debtor obtained a preliminary injunction directing Bank to preserve and store the Subject Assets.

The testimony will confirm that Debtor obtained the return of car prior to complaint being filed and the inclusion of the car in complaint was in error (item a).

Additionally, the EVAP machine was leased in All American's own name and was owned by Irwin Commercial Finance, , so Debtor does not have any interest in same.

With respect to the Smog Equipment (items g, i, q), same were leased from BWC Leasing, and thus Debtor does not own same. There is not any evidence that Debtor exercised any buyout of leased equipment. Accordingly, Debtor does not have any standing to assert claims respecting the Smog Equipment, because same is owned by BWC Leasing. The testimony will establish that

all lease payments on same were made by All American. Thus, even if the buyout was exercised, same would be owned by All American.

With respect to the black hoses (item l), the testimony will be that same are not owned by Debtor, but are owned by friend of Debtor. The evidence will establish that Bank received and stored the black hoses, that same were part of the gasoline pumps at the service station, and that same were either integral part of gasoline pumps so as to constitute fixtures subject to the Bank's UCC lien or became part of the Real Property and were foreclosed by the Bank's deed of trust.

Debtor has not produced any evidences of title with respect to any of the items in b-f, j-k, m-p, r-y. Additionally the testimony will confirm that all monies used to operate business and to purchase supplies were paid by All American. Thus, any payments for items in b-f, j-k, m-p, r-would have been made by All American and such assets would have thus been All American's. Lastly, items in b-f, j-k, m-p, r-y are not scheduled in Debtor' schedule of personal property - Schedule B. To be properly reflected, they would have had to be shown as being used in trade or business, and need to be scheduled as such on Schedule B, parts 28 (office equipment), 29 (machinery, fixtures, equipment and supplies used in business), and 30 (inventory) (parts 4, are all "Household goods"). The only items listed are in part 29 of Schedule B: Automotive equipment including wheel balancer and smog machine valued at $5600. None of the items other than Smog Equipment (items g, i, q) and/or EVAP Machine (item h), constitute "automotive equipment", and thus same have not been adequately scheduled.

Similarly, items in b-f, j-k, m-p, r-y are not scheduled in Exemptions List, Schedule C. Schedule C lists Mechanical Equipment valued at $4000.

*Clarity and Completeness of Schedules*

Listing the assets of a controlled corporation in the shareholder's Schedule B misrepresents their ownership and does not bring them within the protection of 11 U.S.C. Section 362(a). *In re Comoletti*, 2009 WL 4267343, at p. 7 (Bkrtcy. M.D. Fla. 2009).

A paramount duty of the debtor is the duty to file a list of creditors, schedules of assets, liabilities, income, and expenditures, and a statement of financial affairs. 11 U.S.C. § 521(1). The debtor must file a list of property claimed as exempt. 11 U.S.C. § 522(l). *In re Mohring*, 142

B.R. 389, 394 (ED Cal. 1992). The completeness and accuracy of a debtor's schedules are at the heart of the bankruptcy system, and their importance can hardly be understated. The proper "operation of the bankruptcy system depends on honest reporting." *Id*; *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985).

The requirement that the debtor list the property on the schedules serves at least two functions. One is to settle claims of title, so that on the day of discharge everyone knows who owns what. The other is to allow the trustee to decide which claims to challenge. Debtors are not perfectly trustworthy, and unless the claim of exemption contains sufficient detail to put the trustee on notice of questionable assertions, it will not be possible to administer the statutory scheme. *Payne v. Wood, supra*, 775 F.2d 202. This approach is consonant with that of the Ninth Circuit. *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1319–20 (9th Cir. 1992); *In re Mohring, supra*, 142 B.R. at 395 n.16.

The rule in the Ninth Circuit is that trustee and creditors should be able to determine whether an exemption is valid by reading the schedules. *In re Mohring, supra*, 142 B.R. at 394; *Hyman, supra*, 967 F.2d at 1319–20.

While there are no bright-line rules for how much itemization and specificity is required, what is required is reasonable particularization under the circumstances. *In re Mohring, supra*, 142 B.R. at 394. The required degree of specificity increases when itemizing property that is claimed as exempt under Section 522. Two purposes are served by detailed lists of property claimed as exempt. First, claims of title are easily established on the day of discharge. Second, parties in interest are able to decide which claims to challenge. The premium on timely objection heightens the demand for accurate and complete lists and schedules. Ambiguities in matters of claims of exemption will be construed against the debtor because "it is important that trustees and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules." *Payne v. Wood, supra*, 775 F.2d at 206; *Hyman, supra*, 967 F.2d at 1319–20 n.6; *In re Mohring, supra*, 142 B.R. at 395.

The operative principle here is that although bankruptcy confers substantial benefits on the honest but unfortunate debtor, including a discharge of debts, the ability to retain exempt

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd
Suite 950
San Jose, CA 95113

property, and the ability to avoid certain liens that impair exemptions, there is a price. The debtor must comply in good faith with the duties imposed by bankruptcy law. One seeking benefits under the Bankruptcy Code must satisfy the duty to schedule, for the benefit of creditors, all one's interests and property rights. *Oneida Motor Freight, Inc.*, 848 F.2d 414, 416 (3rd Cir. 1988). Failure to comply may warrant denial or, pending compliance, deferral of benefits. *In re Mohring, supra,* 142 B.R. at 396.

Measured by these standards, Debtor's schedules in this case are wholly inadequate. Even assuming that notice to Bank was sufficient, Bank is not be required to guess at what is claimed in the exemptions. By this adversary action, Debtor has demonstrated that he can provide adequate detail as to what he claims he owns. Debtor could have attached exhibits and additional detail to his schedules, in order to provide the added level of clarity, so that the Bank could evaluate the claims and determine how and which claims it wanted to challenge. Any analysis of the adequacy of the descriptions contained in the schedules are to be construed against Debtor. *In re Mohring, supra,* 142 B.R. at 395 n.17 (generic listing of "household goods" is unquestionably ambiguous).

**Standards for Damages.**

If the court finds violation of the stay and injunction statutes, the violations will at best be technical violations for items having nominal value. Debtor valued the Subject Assets in his Schedules B and C at between $4500 and $5600. As shown above, the major assets comprising the claimed Subject Assets were owned by All American. Even if some of the items comprising the Subject Assets were in fact owned by Debtor, the failure to return same is at most a technical violation. Sanctions for a mere technical violation are inappropriate where the situation "lack[s] the element of willfulness or maliciousness that is usually required before a Court will issue contempt sanctions." *In re Cox*, 53 B.R. 829, 831 (Bankr. M.D. Fla. 1985).

The evidence will show that, other than in connection with Debtor's failed motion for summary judgement, Bank never received and the Bank's records do not contain any evidence of title, including the claimed bill of sale related to the original 2000 purchase of the gasoline

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd.
Suite 950
San Jose, CA 95113

business. The absence of such a document is admissible itself as a business record. United States Federal Rules of Evidence, 28 U.S.C. §803(7).

The measure of the debtor's actual damages for failing to return assets of the estate must be the market value of the debtor's goods at the time of their conversion. *In re Seaton*, 462 B.R. 582, 596 (ED Va 2011). We cannot emphasize strongly enough that it is important that debtors complete their Schedules accurately. They are, of course, prepared on a self-declaratory "honor system." They must therefore be considered highly significant, at least when invoked against a debtor to attempt to hold it to its own "honor-system" declarations. *Id*. The failure of a debtor to list items in its schedule precludes the court from awarding relief with respect to same. *Id*. at 599.

Since Debtor's schedules confirm that the Subject Assets are worth at most $5600, any award of damages should be limited to that amount or to an order that same be surrounded to Debtor.

*Fees Must be Reasonable and Proportional to Damages.*

If the court finds violations of the stay/injunction statutes, and further finds that somehow the notice provided bo Bank of the pending Chapter 7 case was sufficient to satisfy the requirements of Section 342, the law provides that attorneys' fees and costs are recoverable under Section 362(k) must be reasonable and necessary. The policy of Section 362(k) to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a cottage industry built around satellite litigation. It is well established that [reasonable and necessary fees do not include unnecessary litigation costs. *In re Beebe*, 435 B.R. 95, 101 (Bankr. NDNY 2010). The proportionality of the fee award to the damages sought, is a significant factor in determining the reasonableness of attorneys' fees. *In re Mosher*, *supra*, 432 B.R. at 476; *In re Seaton*, *supra*, 462 B.R. at 596. Here, the Subject Assets are scheduled at between $4000 and $5600 (which includes many assets that Debtor never owned or that Debtor had in his possession), so any large damage and/or attorneys' fees award must be measured by the acknowledged value of the Subject Assets that are the subject of the pending lawsuit.

## CONCLUSION

12

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd.
Suite 950
San Jose, CA 95113

Bank believes that the court will have no difficulty finding that the objective evidence establishes that the Subject Assets were transferred to All American in 2004, were subject to liens in favor of Bank in 2007, and were lost to foreclosure at Bank's unified foreclosure sale in 2010. Even if the court determines that some or all of the Subject Assets were in fact retained by Debtor, Debtor's failure to provide Bank with proper notice of his bankruptcy, the failure to adequately describe the Subject Assets in Debtor's schedules, and the nominal value of such assets as listed in Debtor's schedules all mitigate in favor of determining a nominal amount of damages.

Dated: April 22, 2013

**ROBERTSON & LEWIS**

By *Wm. Thomas Lewis*
Wm. Thomas Lewis, Esq.
Attorneys for Defendant Santa Cruz County Bank

ROBERTSON & LEWIS
Attorneys at Law
150 Almaden Blvd
Suite 950
San Jose, CA 95113